**SO ORDERED.**

**SIGNED this 14 day of January, 2009.**



*Dale L. Somers*
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for on-line use and print publication.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

WILLIAM ROCCO SCHWINN and
CHERISH ROSE SCHWINN,

　　　　　　　　DEBTORS.

CASE NO. 08-10528
CHAPTER 7

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR TURNOVER OF ECONOMIC STIMULUS PAYMENT**

The matter under advisement is the Trustee's motion for turnover of the 2008 economic stimulus payment received by the Debtors postpetition. Debtors William and Cherish Schwinn (hereafter Debtors) appear by William J. Fields. The Trustee, Edward J. Nazar (hereafter

Trustee), appears by Aaron Johnstun. There are no other appearances. The Court has jurisdiction.[1]

The issue presented is whether, as contended by the Trustee, the entire payment made pursuant to the Economic Stimulus Act of 2008 received by the Debtors postpetition must be turned over to the Trustee or whether, as contended by the Debtors, the Trustee is entitled to only the portion of payment attributable to portion of tax year 2008 that had elapsed prior to Debtors' filing for relief. For the reasons stated below, the Court holds that the Trustee is entitled to turnover of the entire Stimulus Payment.

**FINDINGS OF FACT.**

The parties stipulated to the facts as follows. Debtors filed a voluntary Chapter 7 petition on March 17, 2008. Edward J. Nazar was appointed Trustee. On or about May 8, 2008, Debtors received payment pursuant to the Economic Stimulus Act of 2008 in the amount of $1,800 (hereafter the "Stimulus Payment"). On May 13, 2008, the Trustee filed a motion for turnover of Debtors' 2008 federal and state income tax refunds and the Stimulus Payment.

The parties filed the following stipulations regarding the Economic Stimulus Act of 2008:

> Pursuant to the 2008 Economic Stimulus Act, debtors were required to file a 2007 tax return in order to qualify for a 2008 economic stimulus payment. Debtors filed their 2007 tax return

---

[1] This Court has jurisdiction pursuant to 28 U.S.C.A. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for turnover is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.A. § 157(b)(2)(E). There is no objection to venue or jurisdiction over the parties.

prior to filing a chapter 7 petition. Debtors became entitled to an economic stimulus payment upon filing their 2007 tax return.[2]

**ANALYSIS.**

    **A. Property of the Estate is Broadly Defined.**

Trustee is entitled to turnover of the Stimulus Payment to the extent it is property of the estate.[3] As provided in § 541, the estate includes all property interests of the debtors as of the date of filing, subject to exceptions not relevant in this case. For purposes of § 541, property interests are determined by nonbankruptcy law, usually state law unless "some federal interest requires a different result."[4] When the property interest in question is a creature of federal law, the nonbankruptcy law which defines the debtor's, and therefore the estate's, interest is federal law.[5] In this case, the interest in question is a Stimulus Payment created by federal tax law.

As provided in § 541(a)(1), the estate includes all legal and equitable interests of the Debtors as of the date of filing. Generally, in a Chapter 7 case, property of an individual debtor not owned on the date of filing but subsequently acquired by the debtor does not become property of the estate.[6] However, under the rule of *Segal v. Rochelle*,[7] interests of the debtor are

---

    [2] Doc. 40. The Court is not bound by the stipulation to the extent it is a stipulation of law rather than fact. *Koch v. United States*, 47 F.3d 1015, 1018 (10th Cir. 1995) ("it is well-settled that a court is not bound by stipulations of the parties as to questions of law").

    [3] 11 U.S.C.A. § 542 (future references to Title 11 in the text shall be to section only.)

    [4] *Butner v. United States*, 440 U.S. 48, 55 (1979).

    [5] *E.g, Patterson v. Schumate*, 504 U.S. 753 (1992) (debtor's interest in ERISA plan); *Segal v. Rochelle*, 382 U.S. 375 (1966) (loss-carryback refunds under federal tax law).

    [6] 5 *Collier on Bankruptcy* ¶ 541.03 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2008).

    [7] *Segal v. Rochelle*, 382 U.S. at 380.

3

not excluded from the estate because they are novel or contingent or because enjoyment is postponed. Even a debtor's contractual right to future, contingent property is considered property of the estate.[8] When property coming into the possession of the debtor postpetition "is [so] rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start [then] it should be" property of the estate.[9]

The parties agree that on the date of filing the Debtors' interest in the Stimulus Payment was a contingent interest and that interest was property of the estate. The dispute is over the extent of that interest, whether the entire Stimulus Payment, although received postpetition, is property of the estate or whether the estate's interest is limited to only that portion of the refund attributable to the prepetition portion of tax year 2008, as would be the case if the payment is truly a refund of taxes overpaid during the year of filing.[10]

**B. Nature of the Stimulus Payment.**

Resolving this dispute therefore first requires the Court to consider the nature of the Stimulus Payment under federal law. The starting point is the Economic Stimulus Act of 2008 (the "Act"),[11] effective on February 13, 2008, title 1 of which amended IRC 6428.[12] Subsection (a) of IRC 6428 now provides:

---

[8] *In re Lowe*, 380 B.R. 251, 256 (Bankr. D. Kan. 2007).

[9] *Segal v. Rochelle*, 382 U.S. at 380.

[10] *Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516 (10th Cir. 1991).

[11] PL 110-185, 2008 HR 5140.

[12] 26 U.S.C.A. § 6428 (Supp. 2008).

4

> In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2008 an amount equal to the lesser of -
>
>   (1) net income tax liability, or
>
>   (2) $600 ($1,200 in the case of a joint return).

Subsection (b) states a special rule increasing the amount by $300 for each qualifying child of the taxpayer. Subsection (c) provides that the "credit allowed by subsection (a) shall be treated as allowed by subpart C of part IV of subchapter A of chapter 1," the subpart which enumerates refundable credits, including the earned income credit, which credits are considered overpayments under IRC 6401 if they exceed the tax imposed by subtitle A.[13]

To effect the intended economic stimulus effect, the Act provides in subsection (g) for advance payment of the refund amount and in subsection (f) coordinates that advance refund with the 2008 tax credit otherwise allowable.[14] The IRS website containing basic information

---

[13] 26 U.S.C.A. § 6401 (Supp. 2008).

[14] Subsection (f) (the credit mechanism) and subsection (g) (providing for refund checks) provide:

> (f) Coordination with advance refunds of credit.--
>
> (1) In general.--The amount of credit which would (but for this paragraph) be allowable under this section shall be reduced (but not below zero) by the aggregate refunds and credits made or allowed to the taxpayer under subsection (g). Any failure to so reduce the credit shall be treated as arising out of a mathematical or clerical error and assessed according to section 6213(b)(1).
>
> ***
>
> (g) Advance refunds and credits.--
>
> (1) In general.--Each individual who was an eligible individual for such individual's first taxable year beginning in 2007 shall be treated as having made a payment against the tax imposed by chapter 1 for such first taxable year in an amount equal to the advance refund amount for such taxable year.
> (2) Advance refund amount.--For purposes of paragraph (1), the advance refund amount is the amount that would have been allowed as a credit under

5

on the stimulus payment, in response to the question "How do you get it?", states: "Just file a federal tax return for 2007 by October 15, 2008, even if you normally don't have to because your income usually doesn't meet the filing threshold."[15] As stated in the legislative history (hereafter the "Technical Explanation"):[16] "The provision includes a recovery rebate credit for 2008 which is refundable. The credit mechanism (and the issuance of checks described below) is intended to deliver an expedited fiscal stimulus to the economy."[17]

The legislative history explains these provisions to mean that if a stimulus check computed with reference to the taxpayer's 2007 tax return is in excess of the amount of the refund calculated based upon the 2008 return, the taxpayer will not be required to return the excess payment. The Technical Explanation states as follows:

> Most taxpayers will receive this credit in the form of a check issued by the Department of the Treasury. The amount of the payment will be computed in the same manner as the credit except that it will be done on the basis of tax returns filed for 2007 (instead of 2008). . . .

---

> this section for such first taxable year if this section (other than subsection (f) and this subsection) had applied to such taxable year.
> (3) Timing of payments.--The Secretary shall, subject to the provisions of this title, refund or credit any overpayment attributable to this section as rapidly as possible. No refund or credit shall be made or allowed under this subsection after December 31, 2008.

[15] www.irs.gov/newsroom/article/0,,id=179211,00.html (November 6, 2008).

[16] Joint Committee on Taxation, *Technical Explanation of the Revenue Provision of H.R. 5140, the "Economic Stimulus Act of 2008, as passed by the House of Representatives and the Senate on February 7, 2008* (JCX-16-08) (Feb. 8, 2008) (available at www.house.gov/jct) (hereafter "Technical Explanation"); *see* 154 Cong. Rec. H485-06, H488, 2008 WL 237421 (Statement of Representative Rangel: "I have asked the nonpartisan Joint Committee on Taxation to make available to the public a technical explanation of the provisions of H.R. 5140. The technical explanation expresses the committee's understanding and legislative intent behind this important legislation. This explanation, document JCX-5-08, is currently available on the Joint Committee's Web site.").

[17] Technical Explanation at 3.

> Taxpayers will reconcile the amount of the credit with the payment they receive in the following manner. They will complete a worksheet calculating the amount of the credit based on their 2008 income tax return. They will than subtract from the credit the amount of the payment they received in 2008. For many taxpayers, these two amounts will be the same. If, however, the result is a positive number (because, for example, the taxpayer paid no tax in 2007 but is paying tax in 2008), the taxpayer may claim that amount as a refundable credit against 2008 tax liability. If, however, the result is negative (because, for example, the taxpayer paid tax in 2007 but owes no tax for 2008), the taxpayer is not required to repay that amount to the Treasury. Otherwise, the checks have no effect on tax returns filed for 2008; the amount is not includible in gross income and it does not otherwise reduce the amount of withholding.[18]

**C. Trustee's Contention that the Stimulus Payment Received Postpetition is Property of the Estate Because the Crucial Qualifying Event to Receive a Stimulus Payment was the Filing of Debtors' 2007 Tax Return, a Prepetition Event.**

The Trustee argues that the Debtors' interest in the Stimulus Payment arose when they filed a 2007 income tax return, because this is the "crucial qualifying event" necessary before becoming eligible to receive the payment.[19] According to the Trustee, since the Debtors filed their petition after the Act was passed and after they had filed their income tax return for 2007, a legal interest had attached to the Stimulus Payment at the time of filing and therefore the Stimulus Payment is property of the estate.

The reported decisions agree with the Trustee's position that for taxpayers filing after February 13, 2008, the effective date of the Act, stimulus payments received postpetition based

---

[18] *Id.* at 4-5.

[19] Doc. 46 at 4. The support for this proposition is a quotation from the IRS's frequently asked questions section web page that notes filing a federal tax return as a requirement for eligibility to receive the economic stimulus payment.

upon the debtor's 2007 tax returns are property of the estate.[20] These cases hold that for debtors who filed after February 13, 2008, stimulus payments received postpetition based upon 2007 tax returns are so rooted in the prebankruptcy past that they are property of the estate under § 541.

**D. Debtors' Contention that the Stimulus Payment is an Advance Payment of 2008 Tax Refund.**

Debtors respond that Trustee is entitled to the Stimulus Payment under the foregoing theory only if it is in fact an advance refund of 2007 taxes, rather than a credit against 2008 taxes. Several of the cases holding postpetition payments received pursuant to the Act are property of the estate find the payment to be a refund of 2007 prepetition taxes. For example, in *Schwenke*, the court concluded that the "economic stimulus payment . . . is not an advance on 2008 tax refund."[21] In *Alguire*, the court found that in the Act Congress "decided to restructure and re-calculate the pre-petition [2007] tax liabilities of debtors"[22] and declared "that what the taxpayer is to receive in the check is to be viewed as an extra payment on the 2007 tax liability."[23] Likewise, *Smith*, where the IRS briefed the issue, the court concluded that the

---

[20] *E.g., In re Alguire*, 391 B.R. 252 (Bankr. W.D.N.Y. 2008); *In re Schwenke*, 2008 WL 4381822 (Bankr. D. Mont. 2008); *In re Smith*, 393 B.R. 205 (Bankr. S.D. Ind. 2008); *In re Lacy*, 2008 WL 4000176 (Bankr. S.D. Ind. 2008).

[21] In re Schwenke, 2008 WL 4381822 at *5.

[22] *In re Alguire*, 391 B.R. at 254.

[23] *Id.*

8

stimulus payments constituted a tax refund for debtors' 2007 taxes.[24] *Lacy* also reached this conclusion.[25]

However, the language of the Act and the legislative history support the contrary view urged by the Debtors that the Stimulus Payment is an advance refund of 2008 taxes. The Act expressly provides in subsection (a) for the allowance of a credit for "the first taxable year beginning in 2008."[26] Subsection (g) provides the advance payment is the amount "*that would have been allowed as a credit*" under the Act if it had applied to tax year 2007.[27] The legislative history characterizes the stimulus payment as a credit for 2008.[28] The references to 2007 tax returns are included for the purpose of facilitating the distribution of rebate checks prior to the filing of 2008 tax returns. Some taxpayers, such as those who did not qualify for a stimulus check distributed in 2008 but do qualify based upon their 2008 tax return, may realize

---

[24] *In re Smith*, 393 B.R. at 209 ("Thus, the 2008 Act creates the fiction that the Debtors overpaid their 2007 taxes in the amount of the [stimulus payment], based on information contained within their 2007 tax return. Consequently, the [stimulus payment] constitutes a tax refund for the Debtors' 2007 taxes.").

[25] *In re Lacy*, 2008 WL 4000176 at *3 ("the [stimulus payment] constitutes a tax refund for the Debtor's *2007 taxes*").

[26] 26 U.S.C.A. § 6428(a) (Supp. 2008).

[27] 26 U.S.C.A.§ 6428(g) (Supp. 2008) (emphasis added).

[28] Technical Explanation at 3.

9

the benefit after filing their 2008 tax return.[29] One opinion, *Wooldridge*,[30] when construing the Act for the purpose of determining if the payment was exempt, found the Act created a right to a refund of 2008 taxes and that the "2007 return is but a template in the case of the majority of taxpayers"[31] and the "payment is not directly tied to the 2007 tax return."[32]

The question whether the Stimulus Payment should be regarded as a refund of 2007 taxes or an advance refund of 2008 taxes is a difficult one, with well reasoned arguments supporting both sides. For the reasons examined below, the Court does not decide the issue.

### E. Debtors' Proration Argument.

If the Stimulus Payment is a refund of 2007 taxes, it is clearly so rooted in Debtors' prebankruptcy past that the entire payment is property of the estate. Debtors do not challenge this proposition but rather contend, assuming the refund is of 2008 taxes, the estate's interest is determined by multiplying the Stimulus Payment by the percentage of tax year 2008 which had passed before the date of filing. For the following reasons, the Court rejects this position and

---

[29] "Q. I don't qualify for a stimulus payment based on my 2007 return. But my tax situation will be different in 2008. Will I qualify for any special benefit? A. Possibly. The 2008 tax instructions will include a worksheet to help those who did not qualify for a payment or those who received a reduced amount determine if they can obtain a benefit when they file their 2008 tax returns next year." IRS Economic Stimulus Payment Q&As: Eligibility, www.irs.gov/newsroom/article/0,,id=179181,00.html (Last visited Dec. 10, 2008). *See* 2008 Form 1040, line 70 and Recovery Rebate Credit Worksheet. *See also* Technical Explanation at 4, quoted above.

[30] *In re Wooldridge*, 393 B.R. 721 (Bankr. D. Idaho 2008). The *Wooldridge* court relied upon *Lambert,* which construed the Economic Growth and Tax Relief Reconciliation Act of 2001, after which the Act was patterned. Under the 2001 act, *Lambert* held that year 2000 tax information was used as a way to calculate the year 2001 refund and the 2001 act had no effect upon the tax liability for year 2000. *In re Lambert*, 283 B.R.16 (9th Cir. BAP 2002).

[31] *In re Wooldridge*, 393 B.R. at 730.

[32] *Id.*

10

finds the Stimulus Payment is property of the estate whether characterized as a 2007 or 2008 refund.

In the Tenth Circuit, the general rule is that the portion of a debtor's tax refund for the tax year during which the petition was filed is property of the estate only to the extent attributable to prepetition portion of the tax year.[33] This rule was first adopted in *Barowsky*, where the debtors asserted they were entitled to the full postpetition tax refund for the tax year during which they filed for relief and the trustee claimed he was entitled to the portion of the refund attributable to the prepetition portion of the tax year. The court found the trustee's position to be correct because the prepetition portion of the tax refund essentially represented the "excessive tax withholding which would have been other assets of the bankruptcy estate if the excessive holdings had not been made."[34]

In *Montgomery*[35] the Tenth Circuit applied the proration rule to earned income tax credits (EIC) to which the debtor is entitled during the tax year when the petition is filed. The EIC has been described as follows:

> The Internal Revenue Code (IRC) allows individuals responsible for the support of a child living with him a credit against income taxes due equal to a certain percentage of so much of earned income as does not exceed a specified amount. If the credit exceeds tax liability, the excess is considered "an overpayment" of tax under IRC 6401(b). Section 6402(a) provides for a refund of "any overpayment" to the person who made it.[36]

---

[33] *In re Barowsky*, 946 F.2d at 1516.

[34] *Id.*, 946 F.2d at 1518.

[35] *Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193 (10th Cir. 2000).

[36] *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 851 (1986).

The debtors had filed for relief in 1996, and the EICs at issue were received in 1997 as part of their 1996 refunds. The Bankruptcy court held that the refunds were not property of the estate because they were contingent interests which did not accrue until the end of the tax year. The BAP reversed, and the Tenth Circuit affirmed. It noted that contingent interests are to be included in the property of the estate and that EICs, in addition to being refunds payable at the end of the tax year, may be obtained throughout the tax year since an individual eligible to receive EIC may obtain advance payment of a portion of the amount as part of his wages.[37] The Court stated:

> Given that EIC's are to be treated as tax refunds, and that contingent interests are to be included in the bankruptcy estate, we agree with the BAP and the overwhelming weight of authority that a debtor's EIC for a tax year, as pro-rated to the date of the bankruptcy petition was filed, is property of the estate regardless of whether the petition was filed prior to the end of the tax year.[38]

Debtors contend this proration rule applies to the Stimulus Payment because it is an advance refund of 2008 taxes and Debtors filed for relief during 2008.

**F. Whether the Stimulus Payment is a Refund of 2007 Taxes or an Advance Refund of 2008 Taxes, the Estate is Entitled to 100% of the Payment.**

The estate is entitled to the value of the Debtors' contingent interest in the refund as of the date of filing. The 2008 Stimulus Payment received postpetition was a tax refund under Federal law, but the proration rule does not automatically apply to all tax refunds. A prorata distribution based upon the portion of the number of days of the tax year prior to filing is merely an approximation of the debtor's contingent interest in the refund on the date of filing.

---

[37] *In re Montgomery*, 224 F.3d at 1194.

[38] *Id.*, 224 F.3d at 1195.

12

When this approximation is at odds with the true situation, all of the facts, such as the portion earnings and tax payments throughout the tax year, may be considered to reach a more accurate allocation.[39] For example, when the tax overpayment was made with postpetition earnings and loans, the usual allocation method does not apply and the resulting refund is not property of the estate.[40] The purpose of the allocation is to value the debtor's contingent interest on the date of filing.[41] In this case, that interest is the entire Stimulus Payment, whether it is characterized as a refund of 2007 or 2008 taxes.[42]

The general rule that tax refunds are property of the estate based upon the percentage of the tax year which passed before the date of filing has no applicability. As a matter of law, the refund had no relationship to Debtors' postpetition income or wage withholdings. For these Debtors, who qualified for the payment based upon their filed 2007 tax return, their contingent interest on the date of filing was the right to receive the entire stimulus amount. The Act expressly provides that in the event the stimulus check is in excess of the amount to which Debtors are entitled under the Act based upon their actual 2008 income rather than the income estimated for 2008 based upon the 2007 return, no refund of the overpayment is required.[43] The

---

[39] *In re Donnell*, 357 B.R. 386 (Bankr. W.D. Tex. 2006)

[40] *Christie v. Royal (In re Christie)*, 233 B.R. 110 (10th Cir. BAP 1999).

[41] *In re Middendorf*, 381 B.R. 774, 779 (Bankr. D. Kan. 2008).

[42] *Wooldridge*, the case which construed the Act as creating a refund of 2008 taxes, nevertheless rejected the debtors' argument that proration applied finding that position "nonsensical" and contrary to the IRS position that the stimulus payments are not refunds paid in advance. *In re Wooldridge*, 393 B.R. at 733.

[43] 26 U.S.C.A. § 6428(f)(1) (Supp. 2008).

13

entire Stimulus Payment is property of the estate and must be turned over to the Trustee, whether under the Act it is a refund of 2007 or 2008 taxes.

**CONCLUSION.**

For the reasons stated above, the Stimulus Payment is property of the estate and must be turned over to the Trustee. On the date of filing the Debtors had a contingent interest in the Stimulus Payment, which was distributed to Debtors postpetition either as a refund of 2007 taxes or an advance payment of 2008 tax refund. Regardless of how the Stimulus Payment is characterized, under the facts of this case, the estate is entitled to the entire payment. Although the estate's interest in tax refunds for the tax year in which the petition is filed is generally prorata based upon the portion of the tax year which had passed before the filing, even if the Stimulus Payment is a refund of 2008 taxes, that rule does not apply in this case where the refund has no relationship to the amount of taxes owed by the Debtors in 2008. Since the outcome of this case is the same whether the Stimulus Payment is characterized as a refund of 2007 or 2008 taxes, the Court declines to rule on that issue.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###